<u>UNITED STATES DISTRICT COURT</u>
<u>NORTHERN DISTRICT OF NEW YORK</u>

JOLEE O.,

                      Plaintiff,

   -against-                                             5:23-CV-048 (LEK)

MARTIN J. O'MALLEY,

                      Defendant.

## MEMORANDUM-DECISION AND ORDER

**I.    INTRODUCTION**

Plaintiff Jolee Olszewski brings this action pursuant to 42 U.S.C. § 405(g) seeking review of a decision by Defendant Commissioner of Social Security denying Plaintiff's application for benefits under the Social Security Act. <u>See</u> Dkt. No. 1. Pending before the Court are the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. <u>See</u> Dkt. Nos. 9 ("Plaintiff's Brief"), 11 ("Defendant's Brief").

**II.    BACKGROUND**

The following relevant facts are set forth in the decision written by the Administrative Law Judge ("ALJ"), Dkt. No. 1-1 ("ALJ Decision"), and in the Social Security Administrative Record, Dkt. No. 8 ("Administrative Record").[1]

Plaintiff alleges the following severe impairments: (1) progressive cervical degenerative disc disease ("DDD") with a history of an anterior cervical discectomy and fusion ("ACDF") spanning C4–7; (2) progressive DDD of the lumbar spine with history of Harrington rod placement; (3) primary osteoarthritis of the basal joint of the left thumb; (4) synovitis and

---

[1] Citations to the ALJ Decision and to the Administrative Record utilize ECF pagination.

1

tenosyvitis of the left hand; (5) Bouchard's and Heberden's nodes on the bilateral hands; (6) anxiety disorder; (7) right hip degeneration; (8) obstructive sleep apnea; and (9) degenerative changes to the right knee. See Pl.'s Br. at 2.

Plaintiff alleges a disability onset date of December 10, 2020. See ALJ Decision at 5. Prior to the alleged onset date, Plaintiff worked as a secretary to the Town Supervisor and as a typist. See Admin. Rec. at 201. Plaintiff retired in 2020 after twenty years of employment. See ALJ Decision at 10.

Plaintiff applied for disability insurance benefits on January 8, 2021. See id. at 5. On February 9, 2022, Plaintiff appeared and testified at a hearing held in front of the ALJ. See Admin. Rec. at 31–54. At the hearing, Plaintiff was represented by a non-attorney representative. See ALJ Decision at 5. A vocational expert also testified. See id. On February 25, 2022, the ALJ issued an opinion finding that Plaintiff did not have a disability. See id. at 5–14. The Appeals Council denied Plaintiff's request for review on November 16, 2022. See Admin. Rec. at 5-10. Plaintiff commenced this action on January 12, 2023. See Dkt. No. 1.

In her decision, the ALJ made the following findings of fact and conclusions of law. First, the Plaintiff met the insured status requirements of the Social Security Act. See ALJ Decision at 7. Second, the Plaintiff has not engaged in substantial gainful activity since the alleged onset date of December 10, 2020. See id. Third, the Plaintiff has the following severe impairments: degenerative disc disease of the cervical, thoracic, and lumbar spine; scoliosis; status post posterior thoracic fusion at T4–L1 and anterior cervical decompression and fusion at C4–C7; early degenerative changes to the right knee; Bouchard's and Heberden's nodes on the left and right hands; and obstructive sleep apnea. See id. The ALJ noted that the "claimant's medically determinable mental impairments of anxiety disorder and unspecified depressive

disorder do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore non-severe." Id. at 8. Fourth, Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment in 20 CFR Part 404. See id. at 9. Fifth, the Plaintiff has the residual functional capacity ("RFC") to:

> perform sedentary work as defined in 20 CFR 404.1567(a) except she can occasionally stoop, balance, crouch, crawl, kneel and climb stairs and ramps, but cannot climb ladders, ropes or scaffolds or work at unprotected heights; can frequently handle, finger and feel with the left, dominant upper extremity; can frequently reach bilaterally; and requires a brief 2–3 minute change in position after sitting for 30 minutes, but retains the ability to remain on task.

Id. Sixth, Plaintiff can perform past relevant work, since that work did not include activities precluded by Plaintiff's RFC. See id. at 13.

In ascertaining Plaintiff's RFC, the ALJ relied on the hundreds of pages of opinion, testimony, and medical records in the Administrative Record. In particular, the ALJ cited to the consultative examinations and opinions of three State agency medical consultants: J. Rosenthal, M.D., whose report the ALJ found persuasive; J. Sharif-Najafi, M.D., whose report the ALJ found persuasive; and Elke Lorensen, M.D., whose report the ALJ found partially persuasive. See id. Dr. Rosenthal and Dr. Sharif-Najafi both found that Plaintiff was limited to frequent fingering on the left side. See Admin. Rec. at 66, 85. Dr. Rosenthal also summarized Dr. Lorensen's report as finding that Plaintiff had "gross limitations for . . . using the hands," id. at 76, and found that opinion to be "supported by exam findings and . . . generally consistent with other evidence in the file," id. at 63. Dr. Lorensen found that Plaintiff had left hand pain and arthritis but found no resulting limitations for using the hands. See id. at 449. Because of this, the

ALJ found Dr. Lorensen's report to be only partially persuasive, since finding no limitations was inconsistent with Plaintiff's medical record. See ALJ Decision at 13.

The ALJ also incorporated Plaintiff's testimony and other portions of the medical record. On July 23, 2018, Plaintiff received a diagnosis of primary osteoarthritis in the basal joint of the left thumb. See Admin. Rec. at 288. Plaintiff later received an injection in her left hand to treat the arthritis. See id. On February 15, 2021, Plaintiff reported that she had radiating "neck pain [that] spreads to the left shoulder and down [the] left arm." Id. at 222. On October 20, 2021, Plaintiff reported "that when she exercised her hands got very swollen," and upon examination she "was positive for Heberden['s] and Bouchard's nodes on her hands." Id. at 21, 533, 535. The ALJ also referred to Plaintiff's testimony regarding her activities of daily living ("ADLs") and found that her testimony regarding her daily activities did not support a funding of disability. ALJ Decision at 12.

Plaintiff alleges that the ALJ's opinion was not supported by substantial evidence for four reasons: (1) that the ALJ substituted her own lay opinion for that of medical opinion evidence; (2) that the ALJ failed to assess Plaintiff's neck motion limitation when determining Plaintiff's RFC; (3) that the ALJ failed to assess non-exertional limitations resulting from Plaintiff's chronic physical impairments; and (4) that the ALJ failed to adequately assess Plaintiff's subjective allegations. Pl.'s Br. at 1. Defendant contests these allegations. See Def.'s Br. at 8–15. Plaintiff has since filed a reply. See Dkt. No. 12 ("Plaintiff's Reply").

III.   **STANDARDS OF REVIEW**

When reviewing a denial of disability benefits, a district court does not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3). Instead, a district court reverses or remands only if the Commissioner applied the incorrect legal standards or if the

determination is not supported by substantial evidence. See Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams ex. rel. Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988). If the Commissioner's finding is supported by substantial evidence, it must be sustained "even where substantial evidence may support the plaintiff's position" and where "the court's independent analysis of the evidence may differ from the [Commissioner's]." Hamilton v. Colvin, 8 F. Supp. 3d. 232, 237 (N.D.N.Y. 2013) (citing Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992)). However, the ALJ must articulate how he or she considered the medical opinions and how persuasive he or she found the medical opinions. See 20 C.F.R. §§ 416.920c(a), (b)(1). The two most important factors for determining the persuasiveness of medical opinions are consistency and supportability, and an ALJ must "explain how [he or she] considered the supportability and consistency factors" for a medical opinion. Id. at §416.920c(b)(2).

When determining disability, the Commissioner looks to a five-step evaluation process. See 20 C.F.R. § 416.920. These five steps examine:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the

> claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

McIntyre v. Colvin, 758 F.3d 146, 150 (2d Cir. 2014).

### IV.  DISCUSSION

In this case, the ALJ found that Plaintiff's RFC permitted her to "frequently handle, finger and feel with the left, dominant upper extremity." ALJ Decision at 9. Plaintiff argues that the ALJ "failed to identify evidence or explain how the evidence supports Plaintiff's ability to frequently handle, finger and feel with the left, dominant upper extremity." Pl.'s Br. at 11. The Court agrees. The Court notes multiple problems with this determination and finds that the ALJ failed to support her RFC assessment with substantial evidence.

#### A.  Law Governing Determination of Residual Functional Capacity

"Every individual who is under a disability shall be entitled to a disability benefit." 42 U.S.C. § 423(a)(1) (cleaned up). "Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than 12 months." Canestrare v. Comm'r of Soc. Sec., No. 16-CV-920, 2017 WL 3130327, at *2 (N.D.N.Y. Jul. 21, 2017) (cleaned up). A medically determinable impairment is an affliction that is so severe that it renders an individual unable to continue with their previous work or any other available employment that may be available to them based on age, education, and work experience. See 42 U.S.C. § 423(d)(2)(A). Such an impairment must be supported by "medically acceptable clinical and laboratory diagnostic techniques." Id. § 423(d)(3). The severity of such an impairment is "based on objective medical facts, diagnoses or medical opinions inferable from [the] facts, subjective complaints of pain or disability, and educational background, age,

and work experience." Ventura v. Barnhart, No. 04-CV-9018, 2006 WL 399458, at *3 (S.D.N.Y. Feb. 21, 2006) (citing Mongeur v. Heckler, 722 F.2d 1033, 1037 (2d Cir. 1983)).

"The ALJ is required to both identify evidence that supports his conclusion and build an accurate and logical bridge from that evidence to his conclusion." Courtney F. v. Berryhill, No. 18-CV-47, 2019 WL 4415620, at *7 (N.D.N.Y. Sep. 16, 2019) (cleaned up). "A reviewing court may not accept . . . counsel's *post hoc* rationalizations for agency action." Snell v. Apfel, 177 F.3d 128, 134 (2d Cir. 1999); see McFarland-Deida v. Berryhill, No. 17-CV-6534, 2018 WL 1575273, at *4 (W.D.N.Y. Apr. 2, 2018) ("Although the Commissioner provides several reasons why she thinks the ALJ properly determined that [the plaintiff] could frequently reach, handle, and finger bilaterally despite Dr. Toor's contrary opinion, the ALJ's decision did not give any of these reasons. The Commissioner may not substitute her own rationale when the ALJ failed to provide one."). Remand for lack of substantial evidence may be appropriate even where an ALJ finds a more restrictive limitation than is suggested by cited medical evidence. See Linda L. v. Comm'r of Soc. Sec., No. 20-CV-651, 2021 WL 4147062, at *6 (W.D.N.Y. Sep. 13, 2021) ("Although Defendant found items in the record to support limitations noted in the RFC, there is no medical justification for the ALJ concluding Plaintiff could perform sedentary work when Dr. Brauer opined she could perform medium work . . . It is apparent that this finding solely comes from the lay opinion of the ALJ on the level of exertion Plaintiff could perform") (internal citations omitted).

If an ALJ chooses to credit only parts of a medical opinion, he or she must explain how his or her RFC findings are consistent with that opinion. See Carlin v. Comm'r of Soc. Sec., No. 19-CV-6312, 2020 WL 5995181, at *3 (W.D.N.Y. Oct. 9, 2020) ("In other words, even if Dr. Toor's opinion *could be* reconciled with the ALJ's RFC determination, the problem is that the

ALJ did not do that here."). Remand is appropriate where an ALJ fails to cite to specific evidence supporting an RFC finding and thus fails to support their opinion with substantial evidence.  See Christine P. v. Saul, No. 20-CV-702, 2021 WL 1854508, at *10–11 (N.D.N.Y. May 10, 2021) (remanding since the ALJ appeared to disregard medical opinions and failed to "cite to any specific opinion evidence supporting" the RFC determination). "Remand may be appropriate, however, where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013); see also Pratts v. Chater, 94 F. 3d 34, 39 (2d Cir. 1996) (finding that remand is particularly appropriate where further findings or explanation will clarify the rationale for the ALJ's decision). "Further, where the ALJ's 'RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted.'" Juanita A. v. Comm'r of Soc. Sec., No. 20-CV-1911, 2023 WL 2493810, at *3 (W.D.N.Y. Mar. 14, 2023) (citing Social Security Ruling 96-8p (1996), 1996 WL 374184, at *7). "It is firmly established in the Second Circuit that, based on the non-adversarial nature of social security proceedings, the Commissioner has an affirmative duty to develop the administrative record" where the record is insufficient to make a complete determination. Sarah C. v. Comm'r of Soc. Sec., No. 19-CV-1431, 2021 WL 1175072, at *9 (N.D.N.Y. Mar. 29, 2021) (collecting cases).

"[C]ourts in this district have found mild to moderate hand limitations to be inconsistent with the ability to frequently reach, handle, and finger." Carlin, 2020 WL 5995181, at *3 (remanding where the ALJ failed to explain how plaintiff could perform work involving "frequent handling and fingering despite having mild to moderate difficulties . . . using the hands") (quotation marks omitted); see James B. v. Saul, No. 19-CV-6493, 2021 WL 615855, at

8

*5 (W.D.N.Y. Feb. 17, 2021) (remanding because "the ALJ 'gave significant weight' to the consultative opinion of Dr. Toor, yet failed to 'connect the dots' between Dr. Toor's opinion that Plaintiff had a mild to moderate limitation in fingering and handling, and the RFC formulation that Plaintiff could frequently finger and handle"); Rhiannon W. v. Comm'r of Soc. Sec., No. 21-CV-6333, 2023 WL 6118267, at *6 (W.D.N.Y. Sep. 19, 2023) (remanding for the ALJ to "make specific findings concerning plaintiff's ability to use her hands and incorporate hand limitations, if any, into the RFC").

A plaintiff's ability to complete their ADLs despite their manipulative limitations is not sufficient to prove they can maintain fulltime employment. See Balsamo v. Chater, 142 F.3d 75, 81–82 (2d Cir. 1998); see also Christine P., 2021 WL 1854508, at *11 (finding that the ALJ's opinion merited remand because the ALJ incorrectly equated plaintiff's ability to complete her ADLs with her ability to maintain fulltime employment using her right hand). The positions of Clerk-Typist and Secretary both require frequent handling and fingering. See Clerk-Typist, DICOT 203.362-010 (G.P.O.), 1991 WL 671685; Secretary, DICOT 201.362-030 (G.P.O.), 1991 WL 671672.

### B. The ALJ's Determination of Plaintiff's Residual Functional Capacity

As discussed in detail below, the ALJ's opinion is not supported by substantial evidence. Accordingly, Plaintiff's case will be remanded for further administrative proceedings.

While the ALJ relies on multiple consultative examinations, she does not reconcile either the inconsistencies within the examinations independently or between the three examinations. The ALJ states that she found the opinions of Dr. Sharif-Najafi and Dr. Rosenthal to be persuasive but does not state which specific information within the opinions influenced her RFC finding. See ALJ Decision at 13. Both consultative reports specifically mention that Plaintiff was

9

limited to frequent fingering on the left side. See Admin. Rec. at 66, 85. Dr. Lorensen's report also found that Plaintiff had left hand pain and arthritis. See id. at 449. The ALJ stated that she found Dr. Lorensen's report only partially persuasive because Dr. Lorensen's finding that Plaintiff had no limitations with "using her hands [wa]s inconsistent with [Plaintiff's] orthopedic impairments and on-going treatment for pain." ALJ Decision at 13. However, Dr. Rosenthal's consultative report summarizes Dr. Lorensen's finding as stating that Plaintiff has "gross limitations for . . . using the hands," Admin. Rec. at 76, and states that Dr. Lorensen's opinion "is supported by exam findings and is generally consistent with other evidence in the file," id. at 63. While the ALJ is not required to "perfectly match the limitations" found in a medical opinion, Sarah C., 2021 WL 1175072, at *15, the ALJ must resolve conflicts in the record where they exist, see Cheri Lee H. v. Comm'r of Soc. Sec., No. 19-CV-10, 2020 WL 109007, at *11 (N.D.N.Y. Jan. 9, 2020) (finding no reversible error because "the ALJ resolved genuine conflicts in the record" and "identified substantial evidence in support of her partially contrary findings"). Since the ALJ has not explained which evidence she chose to credit and how she chose to weigh these opinions, the ALJ has failed to address these conflicts.

The ALJ also does not explain how the medical record supports her assessment of Plaintiff's manipulative limitations. In the RFC, the ALJ found that Plaintiff could only frequently handle, finger, and feel with the left, dominant upper extremity. ALJ Decision at 9. Yet, Dr. Sharif-Najafi's report and Dr. Rosenthal's report suggest that Plaintiff's only manipulative limitations are regarding left fingering. See Admin. Rec. at 66, 85. The ALJ does not cite to specific evidence explaining why she found these additional limitations, saying only that Plaintiff "has some additional postural and manipulative limitations . . . consistent with [her] medical imaging, presentation during most examinations, ongoing treatment for pain, and

activities of daily living." ALJ Decision at 13. But it is not precisely clear how the ALJ weighed the relevant evidence. For example, the ALJ does not discuss whether Plaintiff's limitations were due to her arthritis or to her radiating "neck pain [that] spreads to the left shoulder and down [the] left arm." Admin. Rec. at 222. Plaintiff's ability to complete activities of daily living are also not dispositive, since the ability to complete daily activities are not themselves sufficient to suggest that an individual is capable of maintaining full-time employment. See Christine P., 2021 WL 1854508, at *11. The ALJ found more restrictive limitations than suggested by the consultative examinations but does not explain what medical evidence supports finding these specific limitations, as opposed to less restrictive—as suggested by the consultative examinations—or more restrictive limitations. See Carlin, 2020 WL 5995181, at *3 ("Indeed, the Court has no way of knowing whether any examining physician—or any other medical professional, for that matter—would agree with the ALJ's RFC formulation."). Since the ALJ did not cite to specific evidence from the administrative record supporting her determination of Plaintiff's manipulative limitations, the Court cannot effectively review whether that determination was supported by substantial evidence.

It is also unclear how the ALJ came to the determination that Plaintiff had impairments in her left hand but not in her right hand. Plaintiff has had extensive medical treatment of her left hand and received a diagnosis of primary osteoarthritis in the basal joint of the left thumb on July 23, 2018. See Admin. Rec. at 288. To treat that arthritis, Plaintiff received an injection in her left hand. See id. Plaintiff was also diagnosed with Heberden's and Bouchard's nodes on both of her hands. See id. at 535; see also ALJ Decision at 12 (citing to evidence suggesting Plaintiff experienced pain in both hands). Yet, in her RFC, the ALJ only found that the Plaintiff had manipulative limitations in her left hand. See id. at 9. This finding is inconsistent with the fact

11

that the ALJ did not list Plaintiff's arthritis—or any other condition affecting only the left upper extremity—as a medically determinable impairment in the third section of her findings. See id. at 7. Instead, the ALJ found that Plaintiff had severe impairment from the Bouchard's and Heberden's nodes on her left and right hands. See id. The ALJ did not, however, explain how this finding could be reconciled with her finding that Plaintiff only had manipulative limitations in the left hand or her later analysis of severe arthritis while discussing Plaintiff's RFC. See id. at 12.  Thus, the medical evidence and testimony cited do not clearly support a particular RFC regarding Plaintiff's manipulative limitations.

Regardless of whether the assigned RFC could theoretically comport with Plaintiff's medical record, what is dispositive is the fact that the ALJ does not draw the connection between the evidence and the RFC or explain why she chose to credit only certain aspects of the consultative reports and record. See Michelle W. v. Comm'r of Soc. Sec., No. 20-CV-707, 2021 WL 4972934, at *13 (N.D.N.Y. Oct. 26, 2021) (finding that reliance on consultative examinations noting "'mild to moderate restrictions' would be questionable without further support in the record"); Carlin, 2020 WL 5995181, at *3 ("In other words, even if Dr. Toor's opinion *could be* reconciled with the ALJ's RFC determination, the problem is that the ALJ did not do that here. And so the Court has no idea of whether Dr. Toor would agree with the conclusion in the RFC."); Moe v. Colvin, No. 15-CV-347, 2017 WL 6379239, at *6 (W.D.N.Y. Dec. 14, 2017) (remanding where the ALJ's finding regarding that plaintiff was "frequently able to engage in handling and fingering" is not necessarily compatible with the medical opinion that he had "a 'mild to moderate limitation' with respect to using his hands"—an opinion to which the ALJ gave significant weight). Given the fact that courts in this Circuit have found mild to moderate hand limitations to be inconsistent with the types of activity detailed in this RFC, see

Carlin, 2020 WL 5995181, at *3, the ALJ's lack of discussion reconciling the multiple consultative examinations, Plaintiff's medical history, and Plaintiff's own testimony limit the Court's ability to review the ALJ's reasoning.

Defendant argues that the ALJ's findings regarding Plaintiff's manipulative limitations were supported by substantial evidence. Specifically, Defendant argues that it would be reasonable for the ALJ to limit Plaintiff's RFC to frequent handling and feeling on the basis of Dr. Rosenthal's report, which stated that "it is more than reasonable that more than frequent use [of her left hand] would exacerbate pain." Def.'s Br. at 10 (citing Admin. Rec. at 86). While certainly possible, Defendant doesn't account for the inconsistent findings within Dr. Rosenthal's report, which also suggests that Plaintiff's only manipulative limitations are regarding left fingering, as opposed to all motions using the left hand. See Admin. Rec. at 85. Defendant's argument that there was no evidence of issues with the right hand is similarly unavailing, given the ALJ's determination that Plaintiff had a severe limitation related to Heberden's and Bouchard's nodes found in both hands. See ALJ Decision at 7.

Defendant misstates Plaintiff's burden by stating that is the Plaintiff who must "establish a more restrictive RFC than that determined by the ALJ." Def.'s Br. at 10. While the burden is on a claimant to submit evidence sufficient to establish the existence of a disability, 20 C.F.R. § 404.1512(a), as discussed above, it is the ALJ who is required to identify evidence relevant to their RFC determination and "build an accurate and logical bridge from that evidence to [their] conclusion." Courtney F., 2019 WL 4415620, at *7; see Balsamo, 142 F.3d at 80 (finding that the burden was on the ALJ and on the Commissioner to demonstrate that a claimant retained the functional capacity for certain work). The relevant consideration is not merely whether there is any evidence in the record that could support an ALJ's decision, but whether the ALJ has done

13

enough to demonstrate how she came to that decision. Plaintiff has successfully argued that the ALJ has not done so and thus has not supported her decision with substantial evidence.

For these reasons, the Court finds that the ALJ erred in her RFC determination and remands so that the ALJ can address these deficiencies. The Court will decline to assess the other issues raised by Plaintiff since they may be affected by the ALJ's treatment of the case on remand. See Bonet ex rel. T.B. v. Colvin, No. 13-CV-924, 2015 WL 729707, at *7 (N.D.N.Y. Feb. 18, 2015) (declining to assess all of plaintiff's arguments after finding reversible error). Should this case return to the Northern District of New York after remand, the Court will consider arguments re-raised at that time.

## V. CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that the Commissioner's motion for judgment on the pleadings, Dkt. No. 11, is **DENIED**; and it is further

**ORDERED,** that Plaintiff's motion for judgment on the pleadings, Dkt. No. 9, is **GRANTED** to the extent that the Commissioner's decision is reversed, and the matter is **REMANDED** to the Commissioner for further administrative proceedings consistent with this Memorandum-Decision and Order, pursuant to 42 U.S.C. § 405(g); and it is further

**ORDERED**, that copies of this Memorandum-Decision and order be served on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:   February 20, 2024
         Albany, New York

LAWRENCE E. KAHN
United States District Judge